```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
v.                          )    Criminal No. 17-10146-MLW
                            )
                            )
ANTON RISE                  )
```

**GOVERNMENT SENTENCING MEMORANDUM**

On April 10, 2019, United States Probation issued its preliminary Presentence Report ("PSR") in this matter. Because Anton Rise has three or more convictions for a "serious drug offense" or a "violent felony," Probation correctly determined that he is an Armed Career Criminal subject to the 15-year mandatory minimum set forth in 18 U.S.C. §924(e)(1). PSR at ¶33. Because the defendant has also amassed 12 scoreable Criminal History Points irrespective of any enhancements under USSG §4B1.4, his Criminal History category is V and the resulting advisory guideline range is 180-188 months. See, e.g., Johnson v. United States, 135 S.Ct. 2551, 2556 (2015)("Federal law forbids certain people—such as convicted felons, persons committed to mental institutions, and drug users—to ship, possess, and receive firearms. § 922(g). In general, the law punishes violation of this ban by up to 10 years' imprisonment. § 924(a)(2). But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony,"

1

the Armed Career Criminal Act increases his prison term to a minimum of 15 years and a maximum of life.") See also USSG §4B1.1 (a defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C §924(e), has a BOL of 33 and the criminal history calculated from Chapter Four, Part A (Criminal History)).[1]

The government is asking the Court to sentence the defendant to 180 months in prison, to be followed by five years of supervised release.  Although the government sees no basis for a fine in this case, the defendant is required to pay the $100 mandatory special assessment and should be required to forfeit the firearm and ammunition charged in the indictment.

### A. Probation Has Correctly Determined That Rise Is an Armed Career Criminal

The fact that Probation has categorized Rise as an Armed Career Criminal does not, of course, make it so.  As set forth

---

[1] At the outset, the government wishes to advise the court that the defendant has agreed to waive his rights under Rehaif v. United States, 139 S. Ct 914 (2019).  In Rehaif, the Court held that in a prosecution under section 922 the government must plead and prove that the defendant knew of his status as a prohibited person.  Here, Rise was charged under section 922(g)(1) based on his status as a person previously convicted in a court of a crime punishable for more than one year.  Rise's knowledge of that Status comes, from among other things, his prior firearm conviction described at paragraph 49 of the PSR in which he was sentenced to 4-8 years.  A copy of the Rehaif waiver that the defendant and his counsel have executed is attached as Exhibit 1.

2

above, that determination was based on the fact that the defendant has two convictions for Assault with a Dangerous Weapon ("ADW") and one conviction for Possession of a Class B Substance (Crack Cocaine) with Intent to Distribute. See PSR at ¶32 (determination that Rise is an ACC) and ¶¶41 (conviction for Possession Class B with Intent to Distribute] and 47 and 49 (convictions for ADW).

The First Circuit has specifically held that ADW is a categorical violent felony under the ACCA and that crimes otherwise countable as ACC predicates remain so even if prosecuted in Massachusetts District Court where the maximum sentence available is 2½ years. Probation's ACC determination must therefore be upheld. E.g., United States. v. Prophete, 2010 WL 1172274 (D. Mass 2010) (Stearns, J.)("First Circuit precedent is, of course, binding on this court"); Vertex Surgical, Inc. v. Paradigm Biodevices, Inc., 648 F.Supp.2d 226 (D. Mass. 2009)(Woodlock, J.)(in the absence of a decision by a higher court, "a federal district court is bound by First Circuit precedent"); Limone v. United States, 271 F.Supp.2d 345 (D. Mass. 2003)(Gertner, J.). (Even though troubled by First Circuit precedent, district court followed it, noting that: "The [Supreme] Court, however, has admonished the lower federal courts to follow its directly applicable precedent, even if that

precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court the prerogative of overruling its own decisions. We obey this admonition.").

### 1. **The Statutory Framework**

Any consideration of Rise's status as an ACC must begin with the relevant statutory framework.  The ACCA establishes a 15-year mandatory minimum sentence for any person who violates 18 U.S.C. §922(g) and "has three prior convictions * * * for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. §924(e)(1).

A "violent felony" is defined as:

> any crime punishable by imprisonment for a term exceeding one year * * * that-
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. §924(e)(2)(B)(i)-(ii).  A "serious drug offense" is defined as:

> (i) An offense under the Controlled Substances Act (21 U.S.C. 801 *et seq.*), the Controlled Substances Import and Export Act or chapter 705 of Title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or

4

>           (ii) an offense under state law involving
>       manufacturing, distributing or possessing with intent
>       to manufacture or distribute a controlled substance
>       (as defined in Section 102 of the Controlled
>       substances Act (21 U.S.C. § 802) for which a maximum
>       term of ten years or more is prescribed by law.

18 U.S.C. §924(e)(2)(A)(i)-(ii) Although the government has not yet seen Rise's Sentencing Memorandum, he will undoubtedly contend that his prior convictions for ADW cannot be treated as a categorical violent felony for purposes of the ACCA because the consistent line of First Circuit cases holding that ADW is such a predicate are wrong and that his drug conviction should also not count because it was brought in the state District Court.  Both arguments fail.

> **2.  The Massachusetts Crime of Assault with a
>     Dangerous Weapon is a categorical "violent felony"
>     under the ACCA**

As Rise himself acknowledged in his objection to the PSR, a consistent line of First Circuit cases have squarely held that the Massachusetts crime of Assault with a Dangerous Weapon qualifies as a "violent felony" under the ACCA and a "crime of violence" under the cognate provisions of the United States Setencing Guidelines.  <u>United States v. Whindleton</u>, 797 F.3d 105 (1st Cir. 2015), <u>cert. dismissed</u>, 137 S.Ct. 23 (2016)(defendant's prior conviction for assault with a dangerous weapon under Massachusetts statute qualified as a "violent felony," under the ACCA); <u>United States v. Fields</u>, 823 F.3d 20

(1st Cir. 2016)(defendant's prior state conviction for assault with a dangerous weapon was a crime of violence under Sentencing guidelines career offender provisions); and United States v. Hudson, 823 F.3d 11 (1st Cir.2016)(defendant's prior Massachusetts conviction for assault with a dangerous weapon was a predicate "violent felony" under the ACCA). Indeed, this line of cases is so solid that the First Circuit also stated in United States v. Lassend, 898 F.3d 115, 124 (1st Cir. 2018) that it was bound to follow them under the law of the circuit doctrine.[2] See also United States v. Gonzalez, 719 F.Supp.2d 167 D. Mass. 2010)(Wolf, J.)("it is axiomatic that '[u]ntil a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority.'")(citations omitted).[3]

---

[2] The Lassend Court also recognized that "there are narrow exceptions to the law of the circuit rule, including (1) when the holding of the prior panel is 'contradicted by controlling authority, subsequently announced'; or (2) when authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." 898 F.3d at 124 n. 5

[3] These cases are also consistent with the statutory language of the ACCA which define both violent felony and serious drug offense based on the "crime" or "the offense" rather than the offender's role in the offense. See 18 U.S.C. §924(e)(1)(i)-(ii) &(2)(A)(i)-(ii).

Recognizing the consistent line of cases holding that ADW is a categorical predicate under both the ACCA and the Sentencing Guidelines, Rise argues that those cases should be disregarded by this court because of the existence of "aiding and abetting" liability under Massachusetts state law. Specifically, he argues that because pre-2009 Massachusetts law did not require the aider and abettor to share the principal's intent to commit the crime, the ADW convictions here are overbroad and cannot constitute valid ACCA predicates.

Once again, First Circuit law (never mentioned in Rise's objections)4 is to the contrary. Specifically, consideration of Rise's efforts to manufacture an exception to the Whindleton line of cases can begin and end with the Fist Circuit's 2018 decision in Lassend that rejected the very same argument, i.e., that the existence of secondary liability theories imposing criminal responsibility in the absence of shared intent rendered a crime overbroad and therefore precluded it from being a categorical ACCA predicate.

At issue in Lassend was whether the defendant's conviction under New York Penal Law §160.15(4) was a valid ACCA predicate. The statute at issue provides that a defendant is guilty of

---

4   The defendant is relying on a Ninth Circuit case, United States v. Franklin, 904 F.3d 793 (9th Cir. 2018) (government petition for cert. filed February 28, 2019, No. 18-1131).

7

first-degree robbery if "he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefore, he or another participant in the crime . . .[d]isplays what appears to be a pistol, revolver . . .or other firearm."  898 F.3d at 127 (quoting New York Penal Law §160.15(4)) (emphasis added).  The defendant claimed that the statute was not a valid ACC predicate under Leocal v. Ashcroft, 543 U.S. 1 (2004) (holding that the phrase "use . . . of physical force against the person or property of another" in 18 US.C. §16(a) "most naturally suggests a higher degree of intent than negligent or merely accidental conduct"), and Johnson I (requiring "violent force" to satisfy the "physical force" requirement in the ACCA's force clause), because the defendant need not intend the use of violent force as to the display of a firearm that could be the act of an accomplice.  898 F.3d at 130.

    Rejecting Lassend's argument, the First Circuit noted that the ACCA's force clause focuses on the elements of the crime of conviction, "not on the particular acts committed by the defendant or the circumstances of his conviction."  898 F.3d at 130-131.  "What matters for the force clause," the Court said, "is whether a felony's legal definition involves violent force, not whether a particular individual actually employed or

intended to employ violent force in committing that felony." *Id.* The Court noted that a conviction under the New York statute requires that *one* of the offenders have threatened the use of violent force, but that "[t]he force clause does not inquire into which offender in fact made the threat." Id.; see id. at 133 (stating that its conclusion was consistent with Stuckey v. United States, 878 F.3d 62 (2d Cir. 2017), in which the Second Circuit found the same state statute qualified categorically as a violent felony even though an accomplice displayed the weapon). Lassend thus makes clear that the existence of secondary or vicarious liability theories do not render an otherwise categorical violent felony overbroad under the ACCA. See also Gonzales v. Duenas-Alvarez, 549 U.S. 183, 127 S.Ct.815 (2007)(rejecting claim that the availability of aiding and abetting liability rendered California statute overbroad and not a "generic" theft offense; court noted that ""every jurisdiction—all States and the Federal Government—has 'expressly abrogated the distinction' " between principals, aiders and abettors present at the scene of a crime, and accessories before the fact.")

The Lassend Court also stated that its holding comported with traditional accomplice-liability principles. 898 F.3d at 131. The Court noted that when Congress passed the ACCA, "it

was presumably aware that various states imposed vicarious liability under certain criminal laws.  Congress made no attempt to exclude convictions under such laws from the force clause." *Id.* at 133.  Moreover, the Court said, if Congress "had desired to preclude convictions from qualifying as ACCA predicates where the defendant acted as an accomplice and did not intend the principal's use of force, it would have done so clearly.  Congress could have included an express intent requirement in the ACCA's force clause, as it did in other subsections." Id. Lassend thus demonstrates that Rise's first objection to his ACC designation fails.

### 3. Rise's drug distribution conviction is a "serious drug offense" regardless of the state court in which he was convicted

Rise's only other basis for avoiding his designation as an Armed Career Criminal concerns his conviction for Possessing a Class B Substance (Crack Cocaine) with Intent to Distribute that is described at paragraph 41 of the PSR.  Because that case was brought in state district court, where the maximum sentence the Court has jurisdiction to impose is two-and-a-half-years, Rise argues that this cannot be a serious drug offense even though it is undisputed that the underlying statutory maximum is 10 years. See G.L.c. 94C, § 32A(a) (possession of a Class B Substance with

10

intent to distribute is punishable in state prison for a period up to 10 years).

Even Rise recognizes that this argument is flatly contradicted by a settled line of cases that hold that it is the statute of conviction (rather than the jurisdiction of the charging court) that controls whether an offense qualifies as a "serious drug offense."  See PSR Objection #4 ("Mr. Rise acknowledges that the First Circuit has rejected this argument.").  In fact, the First Circuit first reached this result in 2002 and has reaffirmed it with regularity ever since. See United States v. Moore, 286 F.3d 47, 49 (1st Cir. 2002)(prior conviction for possessing cocaine with intent to deliver, for which statutory maximum penalty was 10 years' imprisonment, qualified as "serious drug offense" even though court that adjudicated conviction could not impose sentence of more than two and one-half years); United States v. Weekes, 611 F.3d 68, 72 (1st Cir. 2010)(rejecting argument that prior drug conviction could not be ACC predicate because case was brought in court that "was not authorized to sentence higher than two and one-half years"); United States v. Hudson, 823 F.3d 11, 14 (1st Cir. 20111 (reaching the same result and noting that, "[w]hen a claim runs headlong into circuit precedent, our law of the circuit doctrine must be confronted. That doctrine 'dictates that [i]n a

11

multi-panel circuit ... newly constituted panels ordinarily are constrained by prior panel decisions directly (or even closely) on point.'"); United States v. Lopez, 890 F.3d 332 (1st Cir. 2018)("Lopez's argument that his district court convictions cannot serve as ACCA predicates is not new to us. Indeed, we have addressed, and rejected, nearly identical arguments on three prior occasions").

In Lopez, the court also rejected the defendant's argument that a different result was required based on intervening Supreme Court cases, the very same argument (based on the very same cases) that Rise raises again here.  As the First Circuit stated:

> Attempting to escape the same fate [rejection of his argument that his ACCA designation was erroneous], López tells us that Hudson, Weekes, and Moore should be revisited in light of what he says is "intervening" Supreme Court precedent, Moncrieffe and Carachuri-Rosendo. In Carachuri-Rosendo, the Supreme Court held that the Government could not reclassify a defendant's prior conviction to meet the definition of an "aggravated felony" under the Immigration and Nationality Act ("INA") when the actual circumstances under which that defendant was prosecuted could have never led to such a conviction. 560 U.S. at 582, 130 S.Ct. 2577. In Moncrieffe, the Court dealt with facts similar to Carachuri-Rosendo and reaffirmed that "[t]he outcome in a hypothetical prosecution is not the relevant inquiry" in determining whether a defendant's prior conviction qualifies as an aggravated felony under the INA. Moncrieffe, 569 U.S. at 197, 133 S.Ct. 1678; see Carachuri-Rosendo, 560 U.S. at 566, 130 S.Ct. 2577. López analogizes the Government's approach to classifying a prior conviction as an aggravated felony in Carachuri-Rosendo and Moncrieffe, rejected by the Court in those cases, to the district court's determination here that his 2007 and 2009

12

drug convictions carried a maximum penalty of ten years. López argues that his convictions could only carry a maximum penalty of ten years were he to have been prosecuted in a Massachusetts superior court, a factually different scenario to his case where both convictions were prosecuted in the New Bedford District Court. In light of Moncrieffe and Carachuri-Rosendo, López suggests that the dispositive question in determining whether a prior state conviction qualifies as a "serious drug offense" within the meaning of ACCA is the maximum sentence a defendant could have actually received under the charging circumstances, not the hypothetical maximum sentence were the case to have been prosecuted differently.

**López is wrong**. In fact, as mentioned earlier, his ask directly conflicts with our previous decisions in Hudson, Weekes, and Moore. See Hudson, 823 F.3d at 15; Weekes, 611 F.3d at 72; Moore, 286 F.3d at 49. And unfortunately for him, the pesky "law of the circuit doctrine" dooms his argument that these cases require our renewed attention. United States v. Rodríguez, 527 F.3d 221, 224 (1st Cir. 2008). This doctrine requires us to follow prior panel decisions closely on point. Id. It is "neither a straightjacket nor an immutable rule," though. Id. (quoting *340 Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 142 (1st Cir. 2000) ). Indeed, there are two exceptions to the law of the circuit doctrine in which a departure from circuit precedent is warranted: 1) "where the previous holding is contradicted by controlling authority, subsequently announced," United States v. Pires, 642 F.3d 1, 9 (1st Cir. 2011) (quoting Rodríguez, 527 F.3d at 225); and 2) when "authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." Id. (quoting Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995) ).

López does not meet either exception, however. His reliance on Moncrieffe and Carachuri-Rosendo is misguided for two reasons. First, Moncrieffe and Carachuri-Rosendo fail to meet the timing requirement imposed in both exceptions to the rule of the circuit doctrine. See Pires, 642 F.3d at 9-10. Carachuri-Rosendo was neither "subsequently announced" nor does it "postdate[ ]" our decisions in Weekes or Hudson. See Carachuri-Rosendo, 560 U.S. at 582, 130 S.Ct. 2577; Hudson, 823 F.3d at 15; Pires,

13

642 F.3d at 9; Weekes, 611 F.3d at 72. Likewise, we decided Hudson three years after Moncrieffe. See Moncrieffe, 133 S.Ct. at 1687; Hudson, 823 F.3d at 15. We therefore aren't fooled by López's characterization of Moncrieffe and Carachuri-Rosendo as intervening authority; that designation is simply incorrect.

Second, even without considering the timing of these cases, neither Moncrieffe nor Carachuri-Rosendo controls over our prior ACCA decisions, nor do they "offer[ ] a sound reason for believing that the former panel" that rendered judgment in those cases "would change its collective mind." Pires, 642 F.3d at 9 (quoting Williams, 45 F.3d at 592). In fact, we already rejected the interpretation of Carachuri-Rosendo (and by extension Moncrieffe) that López attempts to employ here in United States v. Rodriguez, No. 11-1431 (1st Cir. July 16, 2012), an unpublished judgment. In that case, the defendant argued that Carachuri-Rosendo demanded we revisit Moore and Weekes. See Rodriguez, judgment at 2. We disagreed, however, explaining that we saw "no reason to believe that the Moore and Weekes panels would change their minds in light of Carachuri-Rosendo." Rodriguez, judgment at 2. Similarly, both parties in Hudson addressed Carachuri-Rosendo in their briefing to the court. See Brief of Appellee at 29-32, United States v. Hudson, No. 14-2124, 2015 WL 4985842 (1st Cir. August 18, 2015); Brief of Appellant at 27, United States v. Hudson, No. 14-2124 (1st Cir. June 9, 2015). The defendant in Hudson specifically relied on Carachuri-Rosendo to argue that this court's decision in Moore was wrongly decided. We nevertheless held in Hudson that the defendant "offer[ed] no new or previously unaddressed reason to deviate from our prior holdings on the issue." 823 F.3d at 15. In other words, we necessarily concluded that Carachuri-Rosendo did not undermine the validity of Moore.

We apply the same reasoning of Hudson and Rodriguez to López's case. Unlike in Moncrieffe or Carachuri-Rosendo, there is no dispute in the present case that López was charged with a statute that prescribed a maximum punishment of ten years imprisonment. M.G.L. ch. 94C, §§ 32(a), 32A(a); see Moncrieffe, 569 U.S. at 195-96, 133 S.Ct. 1678; Carachuri-Rosendo, 560 U.S. at 582, 130 S.Ct. 2577. The statutes under which López was convicted thus "fit[ ] comfortably within the ambit of 'serious drug offense' as that term is defined in" ACCA. Moore, 286 F.3d at 49.

14

890 F.3d at 338-341 (emphasis supplied and internal footnotes omitted).[5]

### B. Supervised Release Issues

The government also asks this Court to impose a 5-year period of supervised release based on the defendant's inability to comply with prior periods of probation.  See PSR at ¶¶41, 42, 43, 45, 46, 49, and 50 (prior probation violations). Because it is not clear where the defendant will live when he is released, PSR at ¶63, the Court should order that the first 6 months of supervised release be spent in a community confinement center unless a residence suitable to Probation is found.  In addition, the government believes that, while on supervised release, the defendant should be provided with anger management counseling

---

5  Rise also suggests that this Court disregard the settled line of First Circuit cases between Moore and Hudson because he claims that other Circuits have reached contrary results in comparable cases.  The same argument was quickly rejected by the Lopez Court. Lopez, 890 F.3d at 341 ("Finally, López resorts to a last ditch effort to change our minds and sway us from existing circuit precedent by pointing us to decisions of the Fourth, Eighth, and Tenth Circuits that allegedly demonstrate a rejection of the type of sentencing enhancement applied in his case. Like most Hail Mary passes, López's falls short. Not only are sister circuit decisions not binding on this court, but none of the decisions cited by López outside of the First Circuit postdate Hudson. Moreover, we find the decisions that López cites incomparable to the present case")(internal citations omitted).

(and any other mental health treatment Probation concludes to be needed), drug testing, and vocational training. The government will also prepare a list of the defendant's historical acquaintances who have felony convictions and that he cannot associate with while on Supervised Release.

                              Respectfully submitted,

                              CARMEN M. ORTIZ
                              UNITED STATES ATTORNEY

                By:  /s/John A. Wortmann, Jr.
                     JOHN A. WORTMANN, JR.
                     ELIANNA NUZUM
                     Assistant U.S. Attorneys
                     One Courthouse Way
                     Boston, MA
                     (617) 748-3100

**CERTIFICATE OF SERVICE**

The government hereby certifies that the foregoing was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants.

                              /S John A. Wortmann, Jr. 9/19/19
                              JOHN A. WORTMANN, JR.
                              Assistant U.S. Attorney