UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 17-cr-10146-MLW |
| | ) |
| ANTONE RISE | ) |

### SUPPLEMENT TO DEFENDANT'S SENTENCING MEMORANDUM

INTRODUCTION

On August 27, 2019 Mr. Rise filed a sentencing memorandum setting forth three arguments for why his prior offenses did not meet the definition of either a "violent felony" or a "serious drug offense."[1] Two of those arguments, he acknowledged, were foreclosed by First Circuit law, and he raised them for the purpose of preservation. The remaining argument was that his convictions were overbroad because Massachusetts convictions are indivisible between substantive and accomplice liability, and that Massachusetts convictions prior to *Commonwealth v. Zanetti*, 454 Mass. 449, 467 (Aug. 3, 2009) could be premised on accomplice liability broader than generic aiding and abetting. This argument has now also been addressed by the First Circuit and rejected. *United States v. Capleton,* 966 F.3d 1 (1st Cir. 2020); *United States v. Maldonado*, 988 F.3d 103 (1st Cir. 2021). Like the other two arguments, Mr. Rise raises it in order to preserve the issue.

---

[1] The government and probation have taken the position Mr. Rise has three convictions that met the definition for either a "violent felony" or a "serious drug offense." 18 U.S.C. §924(e)(1): 1) a 2000 conviction for possession with intent to distribute class B drug in Dorchester District Court (PSR ¶41); 2) a 2000 conviction for assault with a dangerous weapon (bottle) in Dorchester District Court (PSR ¶42); and 3) a 2004 conviction for assault with a dangerous weapon (firearm) in Dorchester District Court (PSR ¶45).

1

Since the time Mr. Rise filed his initial Sentencing Memorandum there have been significant developments in the case law relating to the overbreadth of state drug statutes. Given this, Mr. Rise now raises an additional argument, set forth below, that his prior 2000 conviction for possession with intent to distribute class B drug in Dorchester District Court does not qualify as a predicate offense for purposes of the Armed Career Criminal Act.

Mr. Rise continues to maintain that he is not subject to the enhanced penalties of the Armed Career Criminal Act, 18 U.S.C. § 924(e), and asks this Court to sentence him to time served followed by three years of supervised release. A sentence of time served amounts to over 63 months, which is above the otherwise applicable Sentencing Guideline range of 37-46 months.

I. MR. RISE'S 2000 CONVICTION FOR POSSESSION WITH INTENT TO DISTRIBUTE A CLASS B DRUG IN VIOLATION OF M.G.L. C. 94C §32A(a) IS NOT A "SERIOUS DRUG OFFENSE."

The Armed Career Criminal Act ("ACCA") provides for a mandatory minimum penalty of fifteen years, and maximum of life imprisonment, for a person convicted under 18 U.S.C. § 922(g) who has three prior convictions for either a "violent felony" or a "serious drug offense." A "serious drug offense" is defined as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). To determine whether a prior conviction is a "serious drug offense," courts use a "categorical approach" under which they look "only to the statutory definitions of the prior offenses." *Shular v. United States*, 140 S. Ct. 779, 783 (2020) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)). *See also United States v. Abdulaziz*, 998 F.3d 519, 522 (1st Cir. 2021) (courts must "look only to the elements" of the Massachusetts law offense underlying that

conviction and "not to 'how [the defendant] actually perpetrated the crime to decide if the offense, as defined in the statute, matches the [ACCA's] criteria' for a [serious drug felony]."). Under a categorical approach, the court is to look at the "least of the acts" criminalized by the statute of conviction. *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013). The government bears the burden of demonstrating that a prior conviction properly qualifies as a predicate offense for sentencing enhancement purposes. *United States v. Dávila–Félix*, 667 F.3d 47, 55 (1st Cir. 2011); *United States v. Mohamed,* 920 F.3d 94, 99 (1st Cir. 2019).

Mr. Rise was convicted in Dorchester District Court of possession of a class B substance with intent to distribute in violation of Mass. Gen. Laws ch. 94C § 32A(a) (PSR ¶ 41). That statute punishes "[a]ny person who knowingly or intentionally manufactures, distributes, dispenses or possesses with intent to manufacture, distribute or dispense a controlled substance in Class B of section 31" Mass. Gen. Laws. ch. 94C §32A(a). Mr. Rise's 2000 Massachusetts conviction for possession with intent to distribute cocaine is not a "serious drug offense" under the ACCA for two reasons: First, the Massachusetts definition of cocaine found at M.G.L. c. 94C § 31 is broader than the federal definition of cocaine under the Controlled Substances Act—the definition that controls under the ACCA's "serious drug offense" language. As further discussed below, Massachusetts law criminalizes a derivative of cocaine that federal law does not. Due to this categorical mismatch, Mr. Rise's Massachusetts cocaine conviction cannot be used to enhance his federal sentence under the ACCA. Second, Mr. Rise's 2000 conviction cannot be deemed a "serious drug offense" because M.G.L. c. 94C §32A(a) applies to a person who "dispenses" a controlled substance, which is conduct that falls outside the federal definition of a "serious drug offense" in 18 U.S.C. § 924(e)(2)(A)(ii).

### A. Cocaine, as defined under federal law, excludes a derivative of cocaine that Massachusetts does not.

The ACCA defines a "serious drug offense" as a state offense "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)." 18 U.S.C. § 924(e)(2)(A)(ii). Section 802, in turn, defines a "controlled substance" to "mean[ ] a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). Schedule II, in turn, includes the following cocaine-related substances:

> Unless specifically excepted . . . coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

21 U.S.C. § 812, Schedule II(a)(4).

### 1. Ioflupane I$^{123}$ was removed from the controlled substance schedules in 2015.

Schedule II previously included ioflupane I $^{123}$. "Ioflupane was, by definition, a schedule II controlled substance because it is derived from cocaine via ecgonine, both of which are schedule II controlled substances." Schedules of Controlled Substances: Removal of [123 I] Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54,715, 54,715 (Sept. 11, 2015); s*ee id*. at 54,716 (same) (Exhibit A). However, it was removed from Schedule II in September 2015. Pursuant to 21 U.S.C. § 811, the Attorney General "remove[d] the regulatory controls and administrative, civil, and criminal sanctions applicable to controlled substances, including those specific to schedule II controlled substances, on persons who handle or propose

4

to handle [$^{123}$I] ioflupane." *Id.*[2] Since that time, it has not been included on any federal drug Schedule. *See* 21 C.F.R. § 1308.12(b)(4)(ii) (July 12, 2021) ("except[ing]" ioflupane I$^{123}$ from current Schedule II):

> Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives, and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include:
>
> (1) Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or
>
> **(2) [$^{123}$I] ioflupane;**

21 C.F.R. 1308.12 (July 12, 2021) (emphasis added) (Exhibit B). In short, ioflupane I 123 is not a "controlled substance," as defined in 21 U.S.C. § 802.

### 2. Massachusetts law criminalizes Ioflupane I$^{123}$.

However, in 2000 Massachusetts law (as now), criminalized Ioflupane, which is a derivative of ecgonine. Mass. Gen. Law. c. 94C § 31. Section 31 stated, in pertinent part:

> CLASS B
>
> (a) Unless specifically excepted or unless listed in another schedule, any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis: . . .
>
> (4) Coca leaves and **any** salt, compound, **derivative**, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall

---

[2] Section 811(a)(2) authorizes the Attorney General to "remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule." *See also* 21 U.S.C. § 812, Schedule II(a) (listing controlled substances "[u]nless specifically excepted"); *id.* § 812 Note ("For updated and republished schedules of controlled substances established by this section, see Code of Federal Regulations, Part 1308 of Title 21").

> not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

M.G.L. c. 94C § 31 (emphasis added) (Exhibit C).[3] Accordingly, the Massachusetts definition of cocaine is broader than the federal definition. Due to this mismatch in elements, Mr. Rise's 2000 Massachusetts §32A(a) conviction categorically fails to qualify as a "serious drug offense" under the ACCA.[4]

Other courts have found a state drug statute to be overbroad because it did not except Ioflupane from its definition: Last week a district court in the Southern District of Maryland found that a defendant's 1995 Maryland conviction under Md. Code, Art. 27 § 279(b)(4) was overbroad because it necessarily criminalized ioflupane as a derivative of ecgonine. *See* Transcript of Sentencing Proceedings, *United States v. Demetrius Keaton,* No. TDC-18-215 at 24-30 (D. Md. June 1, 2022) (ECF 146) (attached as Exhibit D). In that case the government did not dispute the defendant's expert's opinion that ioflupane would be criminalized under the Maryland statute but not under the Federal Controlled Substances Act. Exhibit D at 8. Mr. Rise has included the expert affidavit of Benjamin Streifel which was submitted in that case as Exhibit E.[5] Similarly in *United States v. Holliday*, 853 F.App'x 53 (9th Cir. 2021) the Ninth

---

[3] The definition of a Class B substance was enacted in 1971. *See* St. 1971 c. 1071 § 31 This portion of the definition has not changed in the intervening years.

[4] At the time of Mr. Rise's conviction in 2000, Massachusetts state law provided that certificate of analysis signed by the analyst was prima facie evidence of the composition, quality, and net weight of the substance analyzed. M.G.L. c. 111 § 13 (effective until June 20, 2012). A certificate would state that the tested item "was found to contain [cocaine] as defined in Chpater 94 C Controlled Substance Act, Section 31, [Class B]." *See, e.g., Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 308 (2009) (observing that "[t]he certificates reported the weight of the seized bags and stated that the bags '[h]a[ve] been exampled with the following results: The substance was found to contain: Cocaine.'").

[5] The parties arguments are set forth in Defendant's Sentencing Memorandum at 9-14 (DE 117);

Circuit held that a Montana statute was categorically overbroad because it criminalized cocaine derivatives while the federal statutory drug schedules did not, and also overbroad because the federal regulatory drug schedules were amended to exclude "ioflupane" from the list of cocaine-related substances, while the state statutes were not). *See also* Sentencing Hearing, *United States v. Diquan Lamont Carter*, No. 1:21-CR-003-HYJ at 20-21 (W.D. Mich. Sept 14, 2021) (finding that the ACCA enhancement did not apply because the Michigan statute (Mich. Com. Laws Ann § 333.7214(a)(iv)) was broader than the federal definition of Serious Drug Offense).[6] This same issue is also pending in the Eleventh Circuit in *United States v. Jackson*, Case No. 21-13963-F with respect to a similar Florida statute which, like Massachusetts, Maryland, Montana and Michigan, clumps cocaine and ioflupane (as an ecognine derivative) together as a simple sentence. The Eleventh Circuit held oral argument on January 5, 2022.[7]

The First Circuit has recently accepted a drug overbreadth argument in the context of marijuana in a Sentencing Guidelines case. In *United States v. Abdulaziz*, 998 F.3d 519, 531 (1st Cir. 2021), the First Circuit held that Massachusetts' statutory definition of marijuana at the time of the defendant's prior conviction in 2014 was overbroad because it included hemp, whereas at

---

Government's Response to Defendant's Sentencing Memorandum, at 2 (DE 128); Defendant's Reply to the Government's Response to Defendant's Sentencing Memorandum, at 4-10 (DE 129); Government Surreply to Defendant's Reply to Government's Response to Defendant's Sentencing Memorandum (DE 137); Defendant's Reply to Government's Surreply to Defendant's Reply to Government's Response to Sentencing Memorandum (DE 139).

[6] In this case the defendant had submitted an affidavit from an expert and argued that the Michigan cocaine statute was overbroad both because it lacked the exclusion for [123I] Ioflupane and because it broadly covered cocaine stereoisomers, whereas the Federal definition covered only optical and geometric isomers of cocaine. *See* Sentencing Memorandum, *United States v. Diquan Lamont Carter*, No. 1:21-CR-003-HYJ at 20-21 (W.D. Mich. Aug. 31, 2021) (D.E. 29).

[7] The Florida statute at issue criminalized conduct involving "cocaine or ecogonine, including any derivative . . . of cocaine or ecgonine." Fla. Stat. § 893.03(2)(a)(4).

the time of Mr. Abdulaziz's federal sentencing in 2019 hemp had been decriminalized under federal law. That case primarily involved a question of timing: *Abdulaziz* addressed the question of whether the Sentencing Guidelines definition of Controlled Substance Offense in U.S.S.G § 4B1.2(b) as incorporated through § 2K2.1(a)(2), requires a court to compare the elements of the state crime to the Federal drug schedules that were in place at the time of the federal sentencing, or that were in place some point prior to the time of defendant's federal sentencing, (as the government had argued, either at the time of his commission of the federal offense or the time of the prior conviction). The Court rejected the government's arguments and held that, because hemp was not on the CSA's drug schedules when Abudlaziz was sentenced on his §922(g) offense in September of 2019, hemp was not a "controlled substance" within the meaning of the Guideline §2K2.1(a)(2) enhancement. *Id*. at 531.[8]

In the context of analyzing the issue the First Circuit noted that there was no disagreement between the parties that at the time of Mr. Abdulaziz's prior conviction in July 2014, Massachusetts defined "Marihuana" in a way that included hemp. *Id*. at 522 citing M.G.L. c 94C § 31 (defining "Marihuana" as "all parts of the plant Cannibus sativa L., whether growing or not," except for "the mature stalks of the plant, fiber produced from the stalks, oil, or cake made from the seeds of the plant.").[9] Similarly, the Court noted that the parties also agreed that

---

[8] *Abdulaziz* can be said to fairly settle this question of timing, at least in the context of the ACCA. The First Circuit found that the government had waived the argument that the term "controlled substance" in USSG § 4B1.2 does not refer exclusively to the federal controlled substance[s] listed in the CSA's drug schedules, and thus did not address it. *Abdulaziz*, 998 F.3d at 523 n. 2. However, that argument would not apply to the ACCA, where the term "serious drug offense" is defined as "a controlled substance (*as defined in* section 102 of the Controlled Substances Act (21 U.S.C. § 802)" (emphasis added).

[9] The full definition was:

> all parts of the plant Cannabis sativa L., whether growing or not; the seeds

the categorical approach applied and that Abdulaziz's July 2014 conviction "must be understood to be a conviction for possession with intent to distribute hemp even though the record does not establish whether Abdulaziz actually perpetrated that crime by possessing that substance." *Id*. citing *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013).

A similar conclusion must be reached here. The plain text of M.G.L. c. 94C § 31 makes clear that Massachusetts law criminalizes "any derivative" of coca leaves, except those decocainized coca leaves (or extractions) that do not contain either cocaine or ecgonine. Such broad language necessarily includes ecgonine and its derivatives, of which Ioflupane is one. *See e.g., United States v. Hope*, 28 F.4th 487, 498-99 (4th Cir. 2022) (observing that at the time of Hope's state convictions South Carolina defined marijuana as "all species or variety of the marijuana plant" and did not exempt hemp).

Courts in other jurisdictions have reached similar conclusions regarding overbreadth when the state definitions of controlled substances have swept broader the applicable federal definition. *See, e.g., United States v. Fernandez-Taveras*, 511 F.Supp.3d 367 (E.D.N.Y 2021) (defendant's conviction for possession of cocaine under a New York statute was not a removable offense under federal law, because the New York statute criminalized a broader range of cocaine isomers than the Controlled Substances Act); *United States v. Ruth*, 966 F.3d 642, 645-47 (7th Cir. 2020) (2006 conviction for possession with intent to distribute cocaine under Illinois law is

---

        thereof; and resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil, or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted therefrom, fiber, oil, or cake or the sterilized seed of the plant which is incapable of germination.

M.G.L. c. 94c § 1 (July 2014 version).

not a predicate offense under 21 U.S.C. § 841(b)(1)(C) because Illinois's definition of cocaine is categorically broader than the federal one); *United States v. Oliver*, 987 F.3d 794, 807 (8th Cir. 2021) (same);*United States v. Cantu*, 964 F.3d 924 (10th Cir. 2020) (Oklahoma convictions for distribution of controlled dangerous substances did not constitute predicate "serious drug offenses" under the ACCA  drug statute was categorically overbroad because its elements encompassed certain substances that were not federally controlled substances); *United States v. Bautista*, 989 F.3d 698, 704–05 (9th Cir. 2021) (same, as to Arizona marijuana statute); *United States v. Hop*e, 28 F.4th 487, 498-99 (4th Cir. 2022) (South Carolina offense of possession of marijuana with intent to distribute in proximity of a school is not a categorical match with federal definition of serious drug offense). Similarly, this Court should hold that Mr. Rise's 2000 conviction for possession with intent to distribute class B substance pursuant to M.G.L. c. 94C § 32A(a), § 31 is not a "serious drug offense" and cannot be used to enhance Mr. Rise's sentence under the ACCA.

### B. M.G.L. c. 94C § 32A (a) is overbroad because it prohibits dispensing and possession with the intent to dispense, while 18 U.S.C. § 924(e)(2)(A)(ii) does not.

A "serious drug offense" under the ACCA is defined as "an offense under State law, involving manufacturing, distributing, or possession with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). The term "dispensing" is not present within that definition. That absence appears to be intentional, because Congress did include the term "dispense" within the substantive portion of the Controlled Substances Act at 21 U.S.C. § 841(a). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Russello v. United States*, 104 S. Ct. 296, 300 (1983).

In contrast M.G.L. c. 94C § 32A(a) does include the term "dispense." *Id* (criminalizing manufactur[ing], distribut[ing], dispens[ing] or possession with intent to manufacture, distribute or dispense a controlled substance). Each of the terms set forth in Section 32A(a) is defined in M.G.L. c. 94C § 1. Dispense is defined by statute as "to deliver a controlled substance to an ultimate user or research subject or to the agent of an ultimate user or research subject by a practitioner or pursuant to the order of a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling, or compounding necessary for such delivery." Distribute is defined as "to deliver other than by administering or dispensing a controlled substance." "Manufacture" is defined as "the production, preparation, propagation, compounding, conversion or processing of a controlled substance." M.G.L. c. 94C § 1. Each term addresses different conduct. Because M.G.L. c. 94C § 32A(a) criminalizes conduct that is not included 18 U.S.C. § 924(e)(2)(A)(ii), it is overbroad.

M.G.L. c. 94C § 32A(a) is not divisible. Massachusetts treats dispensing as an alternative, factual means rather than an alternative element. The statute lists alternatives disjunctively. The penalties for "dispensing" or "possession with intent to dispense" are the same as those for manufacturing, distributing, or possession with intent to distribute. Evidence that the statute is not divisible can also be found in Mr. Rise's 2000 complaint, which alleged that "not being authorized by law, [defendant] did knowingly or intentionally possess with intent to manufacture, distribute *or dispense* a controlled substance in Class B of G.L. c. 94C §31" Exhibit F (emphasis added). *Mathis v. United States*, 136 S.Ct. 2243, 2257 (2016) (observing that the charging documents "could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate

crime."). Because the statute is overbroad and indivisible, it is not a categorical match for 18 U.S.C. § 924(e)(2)(A)(ii) and cannot be used to enhance Mr. Rise's sentence.

The First Circuit has not addressed the question of whether M.G.L. c. 94C § 32A(a) is overbroad because of its inclusion of the term "dispense."[10] Counsel is aware of one District Court within Massachusetts that has considered the question. *See* Memorandum and Order on Defendant's Motion to Dismiss Information Filed Pursuant to 21 U.S.C. § 851, *United States v. Forbes*, 19-cr-10220-FDS (D. Mass. Jan. 20, 2021) ("Forbes Order") attached as Exhibit G. There the Court correctly concluded that "the Massachusetts statute covers a broader range of conduct compared to the federal statute, and therefore is not a categorical match with the federal statute." Exhibit G at 12.[11] However, relying on a Massachusetts Supreme Judicial Court case from 2010 which involved a physician charged with "dispensing . . . a controlled substance" it concluded that because the additional conduct that Massachusetts criminalizes with the term "dispensing" "is so narrowly defined, and appears to apply only in a highly hypothetical and improbable set of circumstances, there [was] no 'realistic probability' that this defendant was convicted for that conduct here, or that any other defendant would be prosecuted for that conduct." Exhibit G at 12-13 citing *Commonwealth v. Brown*, 456 Mass. 708, 718-19 (2010).

---

[10] The *Forbes* opinion stated that the First Circuit had assumed without deciding in *United States v. Bain*, 874 F.3d 1 (1st Cir. 2017) that the inclusion of the term "dispensing" in a Massachusetts drug trafficking statute did not render the statute overbroad as compared to the definition of serious drug felony. Exhibit G at 5 n.2. However, the defendant reads *Bain* to involve a question of whether the term "bringing into the Commonwealth" within the drug trafficking offense renders the statute overbroad. 847 F.3d at 18.

[11] *See United States v. Fish*, 758 F.3d 1, 6 (1st Cir. 2014) ("a state's definition of a crime is overbroad if its elements allow for conviction without satisfying the elements Congress has provided to define the required predicate offense").

12

This is not the correct mode of analysis. While the district court was correct in concluding that M.G.L. c. 94C §32A(a) was categorically overbroad, it erred in its application of the realistic probability test. The realistic probability concept advises that the "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quoting *Gonzáles v. Dueñas-Álvarez*, 549 U.S. 183, 193 (2007)). *See also United States v. Crocco*, 15 F.4th 20, 22 (1st Cir. 2021) ("The conviction counts as a predicate offense only if every possible violation of that statute (putting aside truly outlandish hypotheticals) fits within the enhancement definition."). However, as the First Circuit in *Swaby v. United States* made clear, the realistic probability test's "sensible caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes has no relevance" where "the state crime at issue clearly does apply more broadly than the federally defined offense." 847 F.3d 62, 66 (1st Cir. 20017) (holding that where Rhode Island drug schedules make clear that Rhode Island offense covers at least one drug on the federal schedules, that offense is too broad to qualify as a predicate, whether or not there is a realistic probability that the state actually will prosecute offenses involving that particular drug).

That requirement is satisfied here. M.G.L. c. 94C §32A(a) plainly criminalizes the conduct of "dispens[ing]," and "possess[ing] with intent to dispense" and thus criminalizes conduct that 18 U.S.C. § 924(e)(2)(A)(ii) does not. In addition, although the First Circuit in *Swaby* has stated that the realistic probability test does not require a showing that the state "actually would prosecute cases" involving the broader conduct (847 F.3d at 65), that condition

13

is also satisfied here: There is a realistic probability that a person could be charged under M.G.L. c. 94C §32A(a) with "dispensing" or possession with intent to dispense a controlled substance (conduct broader than 18 U.S.C. § 924(e)(2)(A)(ii)) because published Massachusetts cases have recognized that individuals have been charged with "dispensing." *See, e.g., Commonwealth v. Comins*, 371 Mass. 222, 232 (1976); *Commonwealth v. Chatfield-Taylor*, 399 Mass. 1, 4 (1987); *Commonwealth v. Pike*, 420 Mass. 317, 322 (1999). There is no need to resort to outlandish hypotheticals when there is, in fact, evidence of actual cases of people charged with a variant of the statute (dispensing) that is not present in 18 U.S.C. § 924(e)(2)(A)(ii).

The *Forbes* opinion appropriately recognized that, under the categorical approach, the fact that the defendant was "not a physician" and "was not prosecuted for writing prescriptions after intentionally failing to register" was irrelevant. Exhibit G at 11. However, it concluded that there was no realistic possibility that Mr. Forbes or anyone else could be prosecuted for unlawful "dispensing," relying on *Brown* and its conclusion that *Brown* had held that the crime of "dispensing" could be committed only in the narrow scenario where a physician wrote a prescription without registering. Exhibit G at 10. It also noted, citing *Duenas-Alvarez* and *Moncrieffe* that the defendant had not identified a case in which someone was actually charged under the statute for the conduct "under [Brown's] narrow definition." Exhibit G at 12 n. 7 (observing that "*Moncrieffe* and *Duenas-Alvarez* appear to require a defendant to identify a case in which someone was actually charged under the statue for the conduct that renders it overbroad.").

To the extent that in 2010 the Supreme Judicial Court in *Commonwealth v. Brown* articulated a narrowed definition of the term "dispensing" that view was not articulated by the SJC at the time that the defendant pled guilty in 2002. *McNeill v. United States*, 563 U.S. 816,

820 (2011) ("Whether the prior conviction was for an offense "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" can only be answered by reference to the law under which the defendant was convicted."); *Abdulaziz*, 519 F.3d at 525 (To decide whether a prior conviction qualifies as a serious drug offense, a court must examine the elements of the offense at the time of that prior conviction). Indeed, although *Brown* only addressed the question of when a physician could be charged with dispensing, the statutory language appears broader – defining to term "dispense" as conduct "by a practitioner or *pursuant to the order of a practitioner.*" M.G.L. c. 94C § 31. While the published cases appear to involve "practitioners," the plain language of the statute also applies to a person who "deliver(s) . . . pursuant to the lawful order of a practitioner." *See also Commonwealth v. Chatfield-Taylor*, 399 Mass. 1, 5 & n.6 (1987) (noting that, while the Commonwealth had proceeded on the assumption that, as part of its case, it must prove that the defendant is registered with the Commissioner of Public Health, and so fits the definition of "practitioner," the court left that question open).

  Moreover, the defendant is not required to identify a case in which someone was actually charged under the statue for the conduct that renders it overbroad when the statute is clear. *Swaby*, 847 F.3d at 66, 68. Even if that were the standard, Mr. Rise has met it. He was charged by a complaint which alleged that he "knowingly or intentionally possess[ed] with intent to manufacture, distribute or **dispense**." Thus, by any measure, there is a realistic probability that the state courts would prosecute cases involving the broader conduct under M.G.L. c. 94C §32A(a). Because the statute punishes a broader range of conduct than the federal statute defining "serious drug offense," the defendant's 2000 conviction pursuant to M.G.L. c. 94C §32A(a) is not an ACCA predicate.

## II.  A SENTENCE OF TIME SERVED IS CONSISTENT WITH ALL §3553(a) FACTORS

Mr. Rise has been in custody on this case since March 4, 2017. In those 63 months, he has proven that he is committed to living his life the right way. He has been incarcerated during the entire COVID-19 pandemic, experiencing harsh, restrictive, isolating and anxiety-provoking conditions for over two years. Despite these conditions and the limited amount of programming available for pre-trial detainees at the Plymouth County jail, Mr. Rise has recently completed a course in career readiness and is currently enrolled in a money and investing class. He has a job at the jail as a unit worker. And in the five years he has been at Plymouth, he has had zero disciplinary infractions. He has maintained relationships with his family, including his mother, his children, and his girlfriend and mother of his youngest son, Sire, now five years old. If released from custody to begin his term of supervised release, Mr. Rise can live with either his mother, a schoolteacher, in Dorchester, or with his girlfriend and their son in Norwood.

A sentence of time served is higher than the sentencing guideline range applicable if the Armed Career Criminal sentencing enhancement does not apply, as Mr. Rise maintains. A 63-month sentence accurately reflects the seriousness of Mr. Rise's offense: the unlawful possession of a firearm. It also takes into account his criminal history, all of which occurred in his teens and twenties. Mr. Rise is now 39 years old. Being prosecuted in federal court, being confined for over five years during an unprecedented pandemic, and being separated from his family and children for that long, serves as an adequate deterrent. Mr. Rise's behavior during his confinement confirms that he is a low risk to recidivate. Further supervision by federal probation will further serve to protect the public, and ensure that Mr. Rise remains on the right path.

CONCLUSION

For the foregoing reasons, this Court should hold that Mr. Rise's 2000 conviction for possession of a class B substance (cocaine) pursuant to M.G.L. c. 94C § 32A(a) is not a serious drug offense under the Armed Career Criminal Act. He asks this Court to impose a sentence of time-served (63 months) followed by three years supervised release.

ANTONE RISE,
By His Attorney,

/s/Jane F. Peachy
Jane F. Peachy, B.B.O # 661394
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

I, Jane F. Peachy, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 8, 2022.

/s/Jane F. Peachy
Jane F. Peachy